**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Joshua Dyson Carraway,** | ) | **COMPLAINT** |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. ________** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **LexisNexis Risk Solutions Inc., and Government Employees Insurance Company d/b/a GEICO,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ________________________________ | ) | |

## COMPLAINT

Plaintiff, Joshua Dyson Carraway, ("Plaintiff") brings this action against LexisNexis Risk Solutions Inc. ("LexisNexis") and Government Employees Insurance Company d/b/a GEICO ("GEICO") for actual, statutory, and punitive damages, costs, and attorney's fees, for Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*

## INTRODUCTION

1. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. ("FCRA"), federal law has required consumer reporting agencies ("CRAs") to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information they compile and sell about individual consumers.

2. "Credit is the lifeblood of the modern American economy, and for the American consumer, access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.,* 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

3. Congress made the following findings when it enacted the FCRA in 1970:

> (a) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> (b) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> (c) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
> (d) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
>
> 15 U.S.C. § 1681(a)(1-4).

4. Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the

collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes. *See Bryant v. TRW, Inc.,* 689 F.2d 72, 79 (6th Cir. 1982).

6. The FCRA requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted quickly to limit the harm to the consumer.

7. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U.S.C. §1681(a)(4).

8. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable investigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

9. A recurring and known issue within the credit reporting industry is the creation of "mixed files."

10. A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

11. "Mixed files" create a false description and representation of a consumer's credit history.

12. The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to the Consumer Report." *F.T.C. v. TRW, Inc.,* 784 F.Supp. 361, 362 (N.D. Tex. 1991).

13. Mixed files are not a new phenomenon. Defendant LexisNexis has been on notice of the existence of mixed files, and the fact that its procedures for creating credit files, including its matching algorithms, are prone to frequently cause mixed files.

14. Notwithstanding Defendant LexisNexis's notice, mixed files continue to occur despite consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

15. A consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information, absent the consumer's knowledge or consent, or both. This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers applies for credit, housing, insurance, or

employment, and a CRA, such as Defendant LexisNexis, sells information pertaining to one consumer in response to the application of the other.

16. CRAs, including Defendant LexisNexis, have been sued thousands of times, wherein an allegation was made that the defendant violated the FCRA.

17. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

18. Notably, the Federal Trade Commission has specifically warned consumer reporting agencies, including Defendant LexisNexis, to review their procedures when a mixed file occurs.

19. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

20. Plaintiff's claims arise out of Defendant LexisNexis's blatantly inaccurate consumer reporting, wherein Defendant LexisNexis published in a consumer report about

Plaintiff the information of another consumer, because Defendant LexisNexis mixed Plaintiff's credit file with that of another consumer.

21. Accordingly, Plaintiff brings claims against Defendant LexisNexis for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports, in violation of the FCRA, 15 U.S.C. § 1681 e(b); for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of a mixed file, and for failing to delete the disputed information from Plaintiff's consumer file, in violation of the FCRA, 15 U.S.C. § 1681i; and for selling Plaintiff's consumer report to third parties, whom did not have a permissible purpose to obtain Plaintiff's consumer report, in relation to insurance applications and tradeline accounts of an unrelated consumer, in violation of the FCRA, 15 U.S.C.§ 1681b(a).

22. Further, Plaintiff also brings claims against the Furnisher, Defendant GEICO, as Defendant GEICO also mixed Plaintiff's information with that of a third party and then reported the mixed information to Defendant LexisNexis, failed to conduct a reasonable investigation to determine the information Plaintiff disputed on his LexisNexis report was inaccurate and, in fact, belonged to another consumer, and failed to delete the disputed information from Plaintiff's consumer file, in violation of FCRA, 15 U.S.C. § 1681s-2b.

23. As part of this action, Plaintiff seeks actual or statutory, and punitive damages, costs, and attorney's fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. 1681, et seq., as described herein.

**PARTIES**

24. Plaintiff, Joshua Dyson Carraway, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

25. Defendant LexisNexis is a Georgia corporation with a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005. LexisNexis is authorized to do business in the State of South Carolina, including within this District and can be served via its registered agent, C T Corporation System, 75 Beattie Place, Greenville, South Carolina 29601,

26. LexisNexis is a "consumer reporting agency" ("CRA") as defined in 15 U.S.C. 1681a(f). Defendant openly admits that it is a CRA under the FCRA. In correspondence accompanying a consumer disclosure, dated January 7, 2026, provided to Plaintiff, Defendant stated, in part:

> Thank you for contacting LexisNexis Risk Solutions regarding information contained in your consumer file. LexisNexis Risk Solutions is a leading provider of reliable, risk management information. We are providing this information to you, pursuant to § 609 of the Fair Credit Reporting Act (15 U.S.C. § 1681g).
>
> LexisNexis Risk Solutions provides consumer reports to customers who have a permissible purpose to access your information. Our customers include companies in various industries, such as financial services, insurance, government, and healthcare.

27. LexisNexis is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

28. Defendant GEICO is an American insurance company headquartered at 7272 Wisconsin Avenue, Bethesda, MD 20814, and is authorized to do business in the State of South Carolina, including within this District. GEICO can be served through its CEO, Nancy Pierce, at 7272 Wisconsin Avenue, Bethesda, MD 20814.

29. GEICO is a "furnisher" as defined in 12 CFR 1022.41. GEICO regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.

30. A data furnisher, such as GEICO, is an entity that reports information about consumers to CRAs. Like CRAs, data furnishers have legal obligations and rules that must be upheld and followed pursuant to 15 U.S.C. § 1681s-2b of the FCRA.

## JURISDICTION AND VENUE

31. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

32. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

33. Plaintiff resides in this District and Division, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Division.

## FACTUAL ALLEGATIONS

### Defendant LexisNexis is a Consumer Reporting Agency, and It Sold FCRA-Governed Consumer Reports Regarding Plaintiff

34. Defendant LexisNexis collects, maintains, warehouses, parses, and sells reports about consumers that include data collected in whole or in part for an FCRA-governed

purpose. As noted above and below, Defendant admits that it acts as a CRA and sells consumer reports.

35. As the FCRA sets forth, a consumer report is:

> Any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be sued or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681 a(d).

36. The "used or expected to be used or collected in whole or in part" clause of § 1681a(d) "incorporates three distinct concepts: ultimate use, expectation of use, and reason for compilation" and communicated information falling within "any one of the clause's components" constitutes a "consumer report," so long as it bears on one of the seven factors in § 1681a(d). *Yang v. Gov't Emps. Ins. Co.*, 146 F.3d 1320, 1324-25 (11th Cir. 1998); *see also Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273-74 (9th Cir. 1990) ("The plain language of section 1681a(d) reveals that a credit report will be construed as a 'consumer report' under the FCRA if the credit bureau providing the information expects the user to use the report for a purpose permissible under the FCRA, without regard to the ultimate purpose to which the report is actually, put."); *Ippolito v. WNS, Inc.,* 864 F.2d 440, 449 n.10 (7th Cir. 1988) ("Because of the circular definition of 'consumer report.' §

1681b's limitation of whether a report is a consumer report is made solely by looking at the reason for which the report is requested").

37. The law has long been that the specific use to be made of a specific report is not relevant to the question of whether or not the data generally was FCRA-governed. *Bakker v. McKinnon,* 152 F.3d 1007 (8th Cir. 1998) stated:

> We hold that, regardless of appellant's intended use for the credit reports, these reports are consumer reports within the meaning of the FCRA because the information contained therein was collected for a consumer purpose. Under the FCRA whether a credit report is a consumer report does not depend solely upon the ultimate use to which the information contained therein is put, but instead, it is governed by the purpose for which the information was originally collected in whole or in part by the consumer reporting agency.

38. Defendant LexisNexis collected the information it subsequently reported about Plaintiff to insurers, creditors, and others "in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for credit, insurance, employment purposes, or one or more of the permissible purposes listed in 15 U.S.C. § 1681b.

39. The information Defendant LexisNexis collected and reported about Plaintiff bore on his credit worthiness, credit standing, credit capacity, [and] general reputation because Defendant LexisNexis's consumer disclosures regarding Plaintiff noted that it provided such information to third parties for permissible purposes under the FCRA that Defendant LexisNexis describes as "insurance underwriting" and "credit application." In fact, Defendant LexisNexis listed FCRA "permissible purposes" for the inquiries listed on consumer disclosures provided to Plaintiff.

40. The information Defendant LexisNexis collected and reported about Plaintiff constituted "consumer reports" under the FCRA because communicated information "used or expected to be used or collected in whole or in part" for an FCRA-purpose constitutes a "consumer report," so long as it bears on one of the seven factors in § 1681a(d). *Yang*, 146 at 1324-25. Defendant LexisNexis provided information regarding Plaintiff to one or more third-parties who certified that they were requesting Plaintiff's information with a FCRA permissible purpose.

41. In its letter of January 7, 2026, to Plaintiff, Defendant LexisNexis specifically informed Plaintiff that it "provides consumer reports to customers who have a permissible purpose to access your information. Our customers include companies in various industries, such as financial services, insurance, government and healthcare."

42. To provide its FCRA-governed products, Defendant LexisNexis has created an extensive database, of which it frequently boasts. To build this database, Defendant LexisNexis collects public records and other information from numerous sources.

43. As the FCRA sets forth, a consumer reporting agency is:

> [A]ny **person** which, **for monetary fees**, dues, or on a cooperative nonprofit basis, **regularly engages** in whole or in part **in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties**, and which uses any means or facility **of interstate commerce for the purpose of preparing or furnishing** consumer reports.

15 U.SC. § 1681a(f) (emphasis added).

44. As demonstrated above, Defendant LexisNexis operates as a CRA because (1) in exchange for compensation; (2) Defendant LexisNexis regularly assembles information on

consumers; (3) for the purpose of furnishing consumer reports; and (4) by means of interstate commerce.

45. There is no dispute as to the first element, that Defendant LexisNexis receives compensation from its customers. The definition of a "customer" is someone paying money to another in exchange for a product or service.

46. Second, Defendant LexisNexis regularly purchases and assembles information on consumers as acknowledged in its marketing materials and numerous court decisions. In Plaintiff's consumer report dated January 7, 2026, Defendant LexisNexis specifically stated the information contained in Section I: Identification Records is "current and historical identity records based on information provided to LexisNexis by a variety of sources. Information contained in each record within this section may have been contributed at different points in time from different sources all of which are disclosed in this report."

47. Third, Defendant LexisNexis enters into contracts with financial institutions and other businesses which expressly provide that these customers may use the information provided under these contracts for purposes governed by the FCRA. These contracts acknowledge that Defendant LexisNexis is a consumer reporting agency under the FCRA. Further, Defendant LexisNexis receives disputes from consumers on a regular basis confirming that its reports are used by its customers for permissible purposes described by the FCRA.

48. Fourth, Defendant LexisNexis utilizes multiple means of interstate commerce to sell its reports, which are disbursed to prospective users around the nation.

49. Sometime prior to January 3, 2024, Defendant GEICO wrongfully placed a $360.18 past due account owed by another GEICO insured by the name of Joshua Knox, in Plaintiff’s name.

50. In January 2024, Plaintiff’s car insurance premium with Defendant GEICO increased from $53.00 per month to over $200.00 per month. In order to determine why his insurance payment increased so drastically, Plaintiff contacted Defendant GEICO. At that time, Plaintiff learned that Defendant GEICO had wrongfully placed a past due account for a consumer named Joshua Knox on Plaintiff's account, or had mixed and/or combined Plaintiff's insurance file with that of Joshua Knox.

51. On August 27, 2025, Plaintiff sued Defendant GEICO for violations of the FCRA as well as Defamation, Libel, Slander.

52. Thereafter, with full knowledge that it had previously mixed Plaintiff’s information with another insured by the name of Joshua Knox, Defendant GEICO furnished inaccurate information to Defendant LexisNexis, and third parties. Specifically, GEICO reported the name of Joshua Kendell Knox and Joshua Dyson Carraway to Defendant LexisNexis as both belonging to Plaintiff.

53. Defendant GEICO also furnished multiple inaccurate and/or mixed insurance policy details to Defendant LexisNexis.

54. Specifically, Defendant GEICO reported two insurance policies in the name of Joshua Kendell Knox, with Driver's License #1010xxxxx…, for May 14, 2020 – July 11, 2020, and May 16, 2023 – July 5, 2023, with Plaintiff's address and date of birth.

55. On or about January 7, 2026, Plaintiff obtained a copy of his LexisNexis® Report, which also contained a C.L.U.E.® Auto Report and a Current Carrier® Report from Defendant LexisNexis.

56. Upon review of the reports from Defendant LexisNexis, Plaintiff discovered each report contained extensive and plainly erroneous information pertaining to a different individual or individuals (collectively, the "Mixed Information").

57. Plaintiff's LexisNexis C.L.U.E.® Report contained four automobile insurance claims that either pertained to a different individual named "Joshua K. Knox," not Plaintiff, or mixed Plaintiff's and Joshua K. Knox's information within the same claim.

Specifically:

(a) Claim Dated May 18, 2023, Claim Number 8724555720000002, under GEICO Policy Number 2313930310084104, listed the driver as "Joshua Kendell Knox," all other information under this claim belonged to Plaintiff;

(b) Claim Dated November 24, 2021, Claim Number 8724555720000001, under GEICO Policy Number 2133730280137614, listed the driver as "Joshua Kendell Knox," all other information under this claim belonged to Plaintiff;

(c) Claim Dated November 28, 2020, Claim Number 0608232401, under Northbrook Indemnity Policy Number 2034930280017002, was listed in

connection with driver "Joshua Knox," with all information related to this claim not belonging to Plaintiff; and

(d) Claim Dated September 6, 2020, Claim Number 0600505309, under Northbrook Indemnity Policy Number 2027230230021040, was listed in connection with driver "Joshua Knox," with all information related to this claim not belonging to Plaintiff;

58. Plaintiff's LexisNexis consumer file contained at least eight (8) inaccurate insurance policies. The first two, reported under the name "Joshua Kendell Knox," were furnished by Defendant GEICO. The remaining six were furnished by other insurers, four (4) under "Joshua Knox," one (1) under "Joshua Knots," and one (1) under "Joshua K Knox," which were associated with the subject insurance claim records.

59. Additionally, the consumer file compiled and maintained by Defendant LexisNexis included erroneous name variations such as "Joshua Knox," "Mr. Joshua Knox," "Joshua Kendell Knox," "Joshua Knots," "Joshua K Knox," and "Joshua Kendall Knox," as well as a Social Security number, several addresses, phone numbers, and email addresses that did not belong to Plaintiff.

60. Further, Defendant LexisNexis was also wrongfully reporting numerous inquiries in connection with applications not initiated by Plaintiff and/or by companies with whom Plaintiff had no relationship, including but not limited to:

(a) October 8, 2025 - PGR SAQ CC
(b) October 8, 2025 - National General Holdings Corp
(c) October 8, 2025 - National General Holdings Corp
(d) October 8, 2025 – PGR POS

(e) October 8, 2025 - National General Holdings Corp
(f) August 10, 2025 – PGR SAQ CC
(g) May 30, 2025 – PGR POS
(h) May 30, 2025 – PGR SAQ CC
(i) June 29, 2023 – Upgrade, Inc.
(j) June 29, 2023 – Upgrade, Inc.
(k) September 3, 2025 - Enterprise Associates LLC - Customer Contact Solutions, LLC
(l) September 3, 2025 - Enterprise Associates LLC - Customer Contact Solutions, LLC
(m) September 3, 2025 - Enterprise Associates LLC - Customer Contact Solutions, LLC
(n) May 30, 2025 - Santander Consumer USA INC DBA Drive Financial Services
(o) May 30, 2025 - Santander Consumer USA INC DBA Drive Financial Services
(p) May 30, 2025 - Santander Consumer USA INC DBA Drive Financial Services

61. Specifically, Plaintiff did not apply for credit with any of the aforementioned entities and did not have a relationship with any of the aforementioned entities. Defendant LexisNexis did not have a permissible purpose for furnishing information about Plaintiff to the above-referenced entities on the above-referenced dates.

62. Upon information and belief, all of the above-referenced inquiries were initiated by credit or insurance applications submitted by a different consumer or for credit accounts opened by a different consumer which Defendant LexisNexis mixed with Plaintiff.

63. As Plaintiff had not authorized any of the above-referenced entities to request Plaintiff's consumer report from Defendant LexisNexis on the above-referenced dates, nor did Plaintiff enter into any business transaction or relationship which otherwise may have provided a basis for those entities securing a copy of Plaintiff's consumer report from Defendant LexisNexis, Defendant LexisNexis disclosed information about Plaintiff to the above-referenced entities without a permissible purpose and in violation of 15 U.S.C. § 1681b(a).

64. Plaintiff was shocked, distressed, and deeply alarmed by the volume and severity of the false information attributed to him in his LexisNexis reports.

65. Rather than furnish a consumer report that accurately reflected Plaintiff's identity, insurance history, and risk profile, Defendant LexisNexis compiled and published a mixed file that erroneously included highly adverse information pertaining to another consumer namely, "Joshua Knox" and "Joshua Kendall Knox."

66. Defendant LexisNexis' publication of inaccurate mixed-file data to Progressive Casualty Insurance on October 29, 2025, October 8, 2025, and May 30, 2025, mischaracterized Plaintiff as a high-risk consumer by including insurance claim records, driver's license violations, and unrelated personal identifiers, which did not belong to Plaintiff. As a result, Plaintiff was damaged.

67. By reporting the aforementioned records and other personal information in the credit file presumably about Plaintiff, despite the fact that the records and information do not belong to Plaintiff, Defendant LexisNexis failed to follow reasonable procedures to assure the maximum accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff's First Dispute to LexisNexis**

68. On or about February 12, 2026, Plaintiff sent Defendant LexisNexis a dispute letter (**"First LexisNexis Dispute"**). In his letter, Plaintiff meticulously identified each inaccurate item that was reporting as belonging to him. Specifically, Plaintiff disputed names reporting under Identification Records that were not his: Joshua Knox, Mr. Joshua

Knox, Joshua Kendell Knox, Joshua Knots, Joshua K. Knox, and Joshua Kendall Knox; the misspelling of his last name: Mr. Joshua Carroway; the reporting of Social Security number xxx-xx-5961 that belongs to Joshua Knox; the reporting of twenty-three (23) addresses at which Plaintiff never lived; seven (7) phone numbers not belonging to Plaintiff; two (2) email addresses never used by Plaintiff; forty-six (46) records listed under Address Characteristic Records for addresses at which Plaintiff never lived; twelve (12) records under Online Marketing Records relating to email addresses never belonging to Plaintiff ; nine (9) Property Assessor records listed for an address at which Plaintiff never lived; eight (8) Insurance Policy records reporting for Joshua Kendell Knox, Joshual Kendell Knox, Joshua Knox, Joshua Knots, and Joshua K. Knox; four (4) Automobile Insurance Claim records reporting for Joshua Knox Kendell and Joshua Knox; five (5) Driver's License Operator Details listed for Joshua Knox Kendell; twelve (12) records under Driver's License Address Details reporting information belonging to someone other than Plaintiff; seven (7) records under LexisNexis Search Transaction Detail reporting for Mr. Joshua Knox; and nineteen (19) Inquiry records by entities that were not made nor authorized by Plaintiff. On the C.L.U.E.® Auto Report, Plaintiff disputed information reporting under four (4) C.L.U.E. Reference Nos. that did not belong to him or were reporting incorrectly. Specifically, Plaintiff disputed the name Joshua K. Knox, an address at which Plaintiff never lived, two (2) VIN numbers for vehicles Plaintiff never owned, two (2) claims incorrectly reporting under the name Joshua Kendell Knox; two (2) claims associated with a driver's license number that did not belong to Plaintiff, and Social Security numbers not

belonging to Plaintiff. On the Current Carrier® Report, Plaintiff disputed the reporting of insurance information that was inaccurate or did not belong to him at all.

69. Plaintiff identified himself and specifically disputed the inclusion of the Mixed Information, including, but not limited to, the inaccurate insurance claim records furnished by Defendant GEICO, in his LexisNexis consumer file.

70. Plaintiff requested that Defendant LexisNexis reinvestigate the disputed information, correct the inaccurate reporting, and issue a corrected copy of his consumer report.

**LexisNexis's Unreasonable Dispute Reinvestigation**

71. On or about February 16, 2026, Defendant LexisNexis received Plaintiff's First LexisNexis Dispute and request that the inaccurate information be removed from his credit file.

72. Thereafter, Defendant LexisNexis sent Plaintiff's dispute to Defendant GEICO and asked Defendant GEICO to investigate the accuracy of the information it furnished.

73. On or about March 15, 2026, Defendant LexisNexis forwarded Plaintiff the results of its reinvestigation, wherein LexisNexis stated they had "reviewed the information from our Insurance Policy Records and determined the data being reported is accurate. Research was conducted with the following sources: Government Employees Ins Co_(GEICO)…," Allstate Insurance, Progressive Insurance, and USAA.

74. Defendant LexisNexis failed to adequately review all of the information provided to it by Plaintiff.

75. Defendant LexisNexis failed to reinvestigate Plaintiff's February 12, 2026, dispute and failed to remove the disputed inaccurate and/or Mixed Information.

76. Defendant LexisNexis violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's February 12, 2026, dispute, or any reinvestigation whatsoever, to determine whether the disputed Mixed Information was inaccurate and to record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant GEICO's Unreasonable Dispute Investigations**

77. Defendant GEICO was informed of Plaintiff's dispute from Defendant LexisNexis on or about February 12, 2026.

78. Defendant GEICO failed to adequately review all of the information provided to it by Plaintiff through Defendant LexisNexis.

79. Defendant GEICO verified the disputed insurance policy records and insurance claim records as accurate when contacted by Defendant LexisNexis in response to Plaintiff's February 12, 2026, reinvestigation request, despite clear indicators (such as the different name and driver's license number) that the policy and claims did not belong to Plaintiff.

80. Defendant GEICO violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to delete the disputed information from Plaintiff's consumer file.

81. On or about March 16, 2026, Defendant LexisNexis sent Plaintiff his Consumer Disclosure Report.

82. On or about March 23, 2026, Defendant LexisNexis sent Plaintiff a letter stating it had filed Plaintiff's dispute dated "February 19, 2026", with Equifax, and had disputed the information on Plaintiff's behalf with Equifax, but had not received a response from Equifax.

83. On or about March 23, 2026, Defendant LexisNexis sent Plaintiff a letter stating it had filed Plaintiff's dispute dated "February 19, 2026", with Experian, and had disputed the information on Plaintiff's behalf with Experian, but had not received a response from Experian.

84. On or about March 23, 2026, Defendant LexisNexis sent Plaintiff a third letter containing the results of its reinvestigation, and instructions for him to access his consumer disclosure report. In this Results of Reinvestigation, Defendant LexisNexis notified Plaintiff that it had reviewed Insurance Policy Records and Automobile Insurance Claim Records and determined, after research conducted with Defendant GEICO, the data reported was unverifiable. The Insurance Policy Record was removed from Plaintiff's LexisNexis file, and the Automobile Insurance Claim Record was updated with data verified as accurate by Defendant GEICO. Numerous other items were deemed unverifiable by Defendant LexisNexis and either removed or updated.

85. Thereafter, Plaintiff obtained a copy of his LexisNexis consumer disclosure report, which continued to contain inaccurate and mixed information reported as belonging to Plaintiff.

**Plaintiff's Second Dispute to LexisNexis**

86. On or about April 6, 2026, Plaintiff sent Defendant LexisNexis a second dispute letter (**"Second LexisNexis Dispute"**), wherein Plaintiff stated he had received Defendant LexisNexis's reinvestigation results, and his consumer disclosure report continued to be mixed with a Joshua Knox and included numerous items and information that were inaccurate. Specifically, Plaintiff disputed six (6) names reporting under Identification Records that were not his, the misspelling of his last name, Social Security number xxx-xx-5961, as that number belonged Joshua Knox; twenty-three (23) addresses at which Plaintiff never lived; seven (7) phone numbers which did not belong to Plaintiff; two (2) email addresses never used by Plaintiff; forty-six (46) records listed under Address Characteristic Records for addresses at which Plaintiff never lived; four (4) records under Online Marketing Records relating to email addresses which never belonged to Plaintiff ; nine (9) Property Assessor records listed for an address at which Plaintiff never lived; seven (7) Insurance Policy Records reporting for Joshua Kendell Knox, Joshua Knox, Joshua Knots, and Joshua K. Knox; two (2) Automobile Insurance Claim records reporting for Joshua Knox Kendell and Joshua Knox; five (5) Driver's License Operator Details regarding violations listed for Joshua Knox Kendell; eleven (11) records under Driver's License Address Details reporting information belonging to someone other than Plaintiff;

seven (7) records under LexisNexis Search Transaction Detail reporting for Mr. Joshua Knox and two (2) misspelling Plaintiff's last name as "Carroway"; and twenty-two (22) Inquiry records by entities that were not made nor authorized by Plaintiff. On the Current Carrier® Report, Plaintiff disputed the reporting of insurance information that was inaccurate and/or did not belong to him at all.

**LexisNexis's Unreasonable Dispute Reinvestigation**

87. Defendant LexisNexis received Plaintiff's Second Dispute on April 9, 2026, and thereafter forwarded same to Defendant GEICO and other furnishers of disputed information.

88. Plaintiff never received a response from Defendant LexisNexis regarding Plaintiff's Second Dispute.

89. Defendant LexisNexis failed to adequately review all of the information provided to it by Plaintiff.

90. Defendant LexisNexis failed to reinvestigate Plaintiff's April 6, 2026, dispute and failed to remove the disputed inaccurate and/or Mixed Information.

91. Defendant LexisNexis violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's February 12, 2026, dispute, or any reinvestigation whatsoever, to determine whether the disputed Mixed Information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Plaintiff's Third Dispute to LexisNexis**

92. On or about April 21, 2026, Plaintiff sent Defendant LexisNexis a third dispute letter (**"Third LexisNexis Dispute"**), wherein Plaintiff stated his consumer disclosure report continued to be mixed with a Joshua Knox and continued to report numerous items and information that were inaccurate. Specifically, Plaintiff disputed four (4) names reporting under Identification Records that were not his, the misspelling of his last name, a Social Security number that number belonged to Joshua Knox, seven (7) addresses at which Plaintiff never lived; three (3) phone numbers which did not belong to Plaintiff; fifteen (15) Court Records that did not belong to him; four (4) Insurance Policy records reporting for Joshua Knox, Joshua Knots, and Joshua K. Knox; one (1) Automobile Insurance Claim record reporting for Joshua Knox; one (1) record under LexisNexis Search Transaction Detail reporting for Mr. Joshua Knox; and twenty-two (22) Inquiry records by entities that were not made nor authorized by Plaintiff. On the Current Carrier® Report, Plaintiff disputed the reporting of insurance information that was inaccurate and/or did not belong to him at all.

**LexisNexis's Unreasonable Dispute Reinvestigation**

93. Defendant LexisNexis received Plaintiff's Third Dispute on April 24, 2026.

94. Plaintiff never received a response from Defendant LexisNexis regarding Plaintiff's Third Dispute.

95. Defendant LexisNexis failed to adequately review all of the information provided to it by Plaintiff.

96. Defendant LexisNexis failed to reinvestigate Plaintiff's April 21, 2026, dispute and failed to remove the disputed inaccurate and/or Mixed Information.

97. Defendant LexisNexis violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's April 21, 2026, dispute, or any reinvestigation whatsoever, to determine whether the disputed Mixed Information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

98. On or about May 11, 2026, Plaintiff obtained a copy of his LexisNexis consumer disclosure report, which continued to have Plaintiff's information mixed with a third party and continued to contain inaccurate information reported as belonging to Plaintiff.

## PLAINTIFF'S DAMAGES

99. To date, Defendant LexisNexis continues to mix Plaintiff's credit file with that of the unrelated consumer.

100. Defendant LexisNexis continues to sell Plaintiff's credit file in response to applications and inquiries pertaining to the unrelated consumer.

101. As a result of the "mixed file," Defendant LexisNexis has misrepresented Plaintiff's insurance and risk profile, causing him to receive inflated insurance premiums and making it difficult, if not impossible, for him to obtain reasonably priced coverage.

102. Defendant GEICO's furnishing of inaccurate information as belonging to Plaintiff caused and/or contributed to Defendant LexisNexis mixing of Plaintiff's credit file.

103. Due to Defendant LexisNexis' inclusion of insurance claims and policy records belonging to another individual as Plaintiff's, Plaintiff's car insurance premium increased

from $53.00 per month to over $200.00 per month. For the past two years, Plaintiff has paid significantly higher premiums for car insurance than he would have had to pay had his LexisNexis credit file not have been mixed.

104. Furthermore, Plaintiff fears that Defendant LexisNexis's unauthorized dissemination of his consumer file has jeopardized his private personal information which will lead to fraudulent activity, which has caused him to suffer anxiety and emotional distress.

105. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

106. At all times pertinent hereto, Defendants' conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent, and in utter disregard for federal law and the rights of Plaintiff herein.

107. Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA are willful.

108. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit/insurance applications of another; damage by loss of credit; loss of ability to

purchase and benefit from his true risk profile; detriment to his true risk profile; the expenditure of time and resources disputing and trying to correct the inaccurate credit reporting; higher insurance premiums; harm to his credit reputation; physical sickness including headaches, loss of sleep; emotional distress including anxiety and embarrassment of having another consumer's personal identifying information and consumer information, including inquiries and stigmatizing insurance claim records, mixed into Plaintiff's consumer file; and family discord.

109. Defendant LexisNexis is aware that its consumer reporting system can and does result in the mixing of consumer credit files, commonly known as the "mixed file" problem. Defendant LexisNexis's matching algorithms and database rules improperly associate and merge consumer information from different individuals, leading to inaccurate consumer reports, many times each year. These errors not only misrepresent consumers' financial histories but also expose personal and financial information to unauthorized third parties, creating risks of identity theft, privacy violations, unjust credit and/or insurance denials, and increased costs for credit and/or insurance. Despite knowledge of these effects, Defendant LexisNexis's algorithms and procedures continue to allow and cause consumers' files to be inappropriately merged, interfering with their ability to access credit, employment, housing, and insurance.

## <u>CLAIMS FOR RELIEF</u>

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedure to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant LexisNexis)

110. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 34 through 109 as if set forth fully herein.

111. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports. *See* 15 U.S.C. §1681e(b).

112. On at least one occasion, Defendant LexisNexis prepared patently false consumer reports concerning Plaintiff.

113. Defendant LexisNexis mixed another consumer's personal and insurance information into Plaintiff's consumer file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness and true risk profile.

114. Defendant LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

115. As a result of Defendant LexisNexis's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit/insurance applications of another; damage by loss of credit; loss of ability to purchase and benefit from his true risk profile; detriment to his true risk profile; the expenditure of time and resources disputing and trying to correct the

inaccurate credit reporting; higher insurance premiums; harm to his credit reputation; physical sickness including headaches, loss of sleep; emotional distress including anxiety and embarrassment of having another consumer's personal identifying information and consumer information, including inquiries and stigmatizing insurance claim records, mixed into Plaintiff's consumer file; and family discord.

116. Defendant LexisNexis' conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant LexisNexis was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

117. Plaintiff is entitled to recover attorney's fees and costs from Defendant LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant LexisNexis)**

118. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 34 through 117 as if set forth fully herein.

119. The FCRA mandates that Defendant LexisNexis conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id.*

120. The FCRA provides that if Defendant LexisNexis conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

121. In or around February 2026, Plaintiff initiated at least one dispute with Defendant LexisNexis and disputed inaccurate information in his consumer file belonging to a different consumer.

122. Defendant LexisNexis conducted *no* investigation of Plaintiff's disputes, or such investigation, if any, was so unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

123. Defendant LexisNexis violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

124. As a result of Defendant LexisNexis's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit/insurance applications of another; damage by loss of credit; loss of ability to purchase and benefit from his true risk profile; detriment to his true

risk profile; the expenditure of time and resources disputing and trying to correct the inaccurate credit reporting; higher insurance premiums; harm to his credit reputation; physical sickness including headaches, loss of sleep; emotional distress including anxiety and embarrassment of having another consumer's personal identifying information and consumer information, including inquiries and stigmatizing insurance claim records, mixed into Plaintiff's consumer file; and family discord.

125. Defendant LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant LexisNexis was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

126. Plaintiff is entitled to recover attorney's fees and costs from Defendant LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681b(a)**
**Furnishing a Credit Report Without a Permissible Purpose**
**(Third Claim for Relief Against Defendant LexisNexis)**

127. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 34 through 126 as if set forth fully herein.

128. This action involves the willful, knowing, and/or negligent violation of the FCRA relating to the dissemination of consumer credit and other financial information.

129. Plaintiff is a "consumer" as defined by the FCRA.

130. Defendant LexisNexis is a consumer reporting agency that furnishes consumer reports as defined and contemplated by the FCRA.

131. The FCRA prohibits any consumer reporting agency from furnishing a consumer report unless it has a permissible purpose enumerated under FCRA, 15 U.S.C. § 1681b(a).

132. On multiple occasions, Defendant LexisNexis furnished Plaintiff's consumer report to various entities without a permissible purpose in response to insurance applications and credit accounts of another, which did not involve Plaintiff, and which Defendant LexisNexis therefore had no reason to believe such entities intended to use Plaintiff's consumer information in connection with a consumer transaction involving Plaintiff in violation of 15 U.S.C. § 1681b(a).

133. Defendant LexisNexis violated 15 U.S.C. § 1681b(a) by selling Plaintiff's consumer report to third parties who did not have a permissible purpose for Plaintiff's consumer report.

134. As a result of Defendant LexisNexis's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit/insurance applications of another; damage by loss of credit; loss of ability to purchase and benefit from his true risk profile; detriment to his true risk profile; the expenditure of time and resources disputing and trying to correct the inaccurate credit reporting; higher insurance premiums; harm to his credit reputation;

physical sickness including headaches, loss of sleep; emotional distress including anxiety and embarrassment of having another consumer's personal identifying information and consumer information, including inquiries and stigmatizing insurance claim records, mixed into Plaintiff's consumer file; and family discord.

135. Defendant LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant LexisNexis was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**COUNT IV**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer**
**(First Claim for Relief Against Defendant GEICO)**

136. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 34 through 135 as if set forth fully herein.

137. Defendant GEICO refused to remove information that belonged to another consumer from Plaintiff's name.

138. Defendant GEICO violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to

Plaintiff to Defendant LexisNexis; and, by failing to cease furnishing inaccurate information relating to Plaintiff to Defendant LexisNexis.

139. As a result of Defendant GEICO's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, higher insurance premiums, loss of credit; loss of ability to purchase and benefit from his true risk profile; detriment to his true risk profile; the expenditure of time and resources disputing and trying to correct the inaccurate credit reporting; harm to his credit reputation; physical sickness including headaches, loss of sleep; emotional distress including anxiety and embarrassment of having another consumer's personal identifying information and consumer information, including inquiries and stigmatizing insurance claim records, mixed into Plaintiff's consumer file; and family discord.

140. Defendant GEICO's conduct, action, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant GEICO was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

141. Plaintiff is entitled to recover attorney's fees and costs from Defendant GEICO in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual or statutory damages from Defendants pursuant to 15 U.S.C.

§1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1).

B. Punitive damages from Defendants pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendants pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D. For this matter to be heard by a jury; and

E. For such other and further relief as this Court deems necessary and proper.

*s/ Penny Hays Cauley*
Penny Hays Cauley, Fed ID #10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*s/ Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL**
LexisNexis Risk Solutions Inc.
c/o C T Corporation System
75 Beattie Place
Greenville, South Carolina 29601

**DEFENDANT TO BE SERVED VIA PROCESS SERVER**
Government Employees Insurance Company d/b/a/ GEICO
c/o Nancy Pierce, CEO
7272 Wisconsin Avenue
Bethesda, MD 20814